May it please the Court, Heather Muse for Petitioner Kenneth Walter Anderson. With me is Brenda Simon. I will address, time permitting, I will address the issue of whether Mr. Anderson understood the nature of the charges against him, and whether Mr. Anderson understood the direct consequences of his plea. While Ms. Simon will address whether or not Mr. Anderson entered his plea voluntarily, we'd like to reserve two minutes for rebuttal. What is undisputed in this case is that when Mr. Anderson was asked whether he understood the direct consequences of his plea, that is, the maximum sentence, he did not respond. Clearly established federal authority requires that the record affirmatively show that Mr. Anderson understood the direct consequences of his plea. The record is insufficient in this case. He was also asked by the trial judge during the plea colloquy if he'd had a chance to consult with his attorney about the consequences of the plea, and he answered affirmatively. That is correct, Your Honor. But the judge never asked, for example, did you discuss with your attorney the maximum possible sentence for this crime? And in any case, they won't. Is that required? Your Honor, particularly in these circumstances where the evidence shows that Mr. Anderson was mentally retarded, had limited experience with the criminal justice system, limited education. Did the trial judge know that? You know, it's not clear from the record, Your Honor. We did receive the court's order, and we will attempt to acquire those records. They were not in Mr. Anderson's possession, and they were not of record in the district court. Based on the current state of the record, can we say whether or not the trial judge was aware of Mr. Anderson's mental condition at the time he accepted the plea? We cannot, Your Honor. How about when he was sentenced? When he was sentenced, he certainly had the reports that the court put in front of him. However, as I said, we'll attempt to provide those to the court. I have not seen them, so I cannot represent what their contents are. However, in any case, the court was required to affirmatively establish on the record that Mr. Anderson understood the plea. And frankly, Your Honor, the court should have inquired further to determine whether Mr. Anderson was competent to understand that plea. Simply asking him whether or not he had discussed with his attorneys the direct consequences of that plea and whether he understood that was not sufficient. Certainly someone who is unsophisticated is not going to know the legal requirements or what the direct consequences of the plea are. The record, as I indicated, is that when Mr. Anderson himself was asked about whether he understood the maximum consequence of the maximum possible sentence, he indicated there was no response on the record. The government concedes this. Despite the suspicious silence on the record, the judge did not follow up any further on this issue of the maximum possible sentence. And in fact, particularly to someone in Mr. Anderson's position, the record could certainly suggest to him that his misunderstanding was, in fact, what the case was, what the maximum possible sentence was. That is 15 years followed by parole. Did the petitioner ever put anything in the record as to what his counsel told him at the time? Yes. On this issue of the maximum possible sentence, Your Honor, the petitioner did submit a declaration in the state court proceedings indicating that from his It's not indicating, stating. Stating. Yes. Certainly. That he, his counsel had discussed this issue with him, and he misunderstood from his counsel what the sentence was. Well, he said his understanding from his counsel was that he would receive a 15-year term. Absolutely. And that's in the record at E.R. 0 for 67, Your Honor. And he also said he would not have pled guilty had it not been 15. For whatever it's worth, those were his declarations in the state court. Yes. So that evidence was before the state court. That evidence was before the district court in this case, that he did not understand the maximum possible sentence either from his discussion with counsel or from anything that occurred in the proceeding. And in any case, the law requires an affirmative showing. Was there any statement by his counsel as to what was told to him? There was no evidence submitted by his counsel, Your Honor. However, the government made no attempt to introduce evidence on this point. So the only evidence on the issue was Mr. Anderson's statement. And, frankly, the government here doesn't really contest this issue that Mr. Anderson did not understand. The government simply asserts that Mr. Anderson's understanding was objectively unreasonable. And I submit that that's not the standard. The standard is whether Mr. Anderson himself understood the direct consequences of his plea, including the maximum possible sentence. Of course, the judge told him in court. And what are we going to take from that? That he couldn't hear? He didn't say he couldn't hear. Well, Your Honor, if Mr. Anderson had not spoken English, I think there would be no doubt that an interpreter would be required so that he could actually understand what the judge is saying. But he didn't. He wasn't. He didn't have that English problem. That's correct, Your Honor. However, I submit that someone who is mentally retarded has limited capacity to understand. And, in fact, the record doesn't reflect that he did understand. And that is what is required. Unless the Court has to just briefly touch on the issue of the nature of the charge against him, I would similarly posit that off-the-record discussions with Mr. Anderson's counsel on the nature of the charges are insufficient as a matter of law to establish that Mr. Anderson understood the true nature of the charge against him. And that the subsequent case law interpreting Rule 11 is informative on this issue, is this issue about what is actually required under Boykin and in Henderson. Unless the Court has further questions on this issue, I'll cede the remainder of my time. Brenda Simon for Anderson. The package plea deal in this case was inherently coercive. The trial court did not make the required careful examination of voluntariness surrounding this package plea deal. There are three reasons required for this careful examination. First, co-defendant Martin, with whom the package plea deal was made, was on escape from a mental institution, had a lifetime history of violence and arrests, was twice as old as Anderson, was bigger, and, as the prosecutor stated, was the moving force behind the underlying crime. Second, Mr. Anderson had expressed fear of Martin to the police, and this was part of the record. Third, despite this known fear, both men were present together and questioned jointly during the plea-taking procedure. Are there any cases that say that that in and of itself is a problem constitutionally? Yes. Boykin requires an affirmative showing of voluntariness on the record. Boykin was a case where there was no colloquy at all, right? That is true. In this particular situation, however, given the defendant ---- I'm back to your statement that there was a problem with them being jointly put through a plea colloquy. And my question is, is that in and of itself a constitutional problem? Well, the court in Bordenkircher in a footnote mentioned that there is an inherent coercion in these type of agreements. These type of agreements tend to skew the risks that the defendants assess in determining whether to enter a plea. And in this particular situation, where Mr. Anderson had stated to police that he was afraid of defendant Martin and had acted out of fear in the underlying crime and had in fact hit a sofa with a pipe, which caused Martin to become more angry with him, this is a particular situation in which the men should have been questioned separately. In addition, when the court asked Mr. Anderson if he had any further questions, Mr. Anderson responded that he did not have any questions at this time. At a minimum, this should have prompted the trial court to question the men separately to ensure that there was no element of coercion. The court in Carroll and Costello has held that these types of agreements require a careful examination of the circumstances surrounding these types of tax claims. Was this claim raised in state court? Yes, it was. In both the original and amended behaviorist petitions and the pleadings before the state and district courts, Mr. Anderson submitted that his plea was not entered voluntarily. The preliminary hearing transcripts as well as the plea taking were before the state and district courts, both of which showed that Mr. Martin was the moving force behind the crime and that he had – and that Mr. Anderson had stated a fear of Mr. Martin on the record. I guess my question more precisely is, did he ever raise the issue of coercion in the state court proceedings? The issue of coercion – the facts underlying the argument for the issue of coercion were before the court. The fact that Mr. Martin was bigger, the fact that he had – the fact that Mr. Anderson had stated to police that he was afraid of Mr. Martin. I understand he was pro se during much of this, but did he ever use the word coercion in any of his filings? Off the top of my head, I'm not sure if he used the exact word coercion. However, the court has held that the procedural requirements of exhaustion are not supposed to be a trap for the unwary. And in this situation, Mr. Anderson was not represented by counsel, either on his habeas appeals to the state court or to the federal courts. Therefore, the involuntariness claim has been exhausted based on the liberal procedural requirements of exhaustion for a pro se petitioner. I'd like to reserve the time for rebuttal if there are no further questions. Thank you, counsel. Thank you. May it please the court, Deputy Attorney General Justin Riley for appellee. Excuse me. I'd like to address first the – whether or not appellant understood his maximum sentence. The record does show that he was fully aware of what – just what direct consequences he was facing. Can you point us in the plea colloquy where it shows that he understood he was getting a sentence of 15 years to life? The trial court – The answer to that is either yes or no. I'm sorry. No, he didn't say I understand. So you agree there's no place in the plea colloquy where Anderson indicates an understanding that he's going to receive a sentence of 15 years to life? In that he didn't say I understand I'm going to receive 15 years to life. Well, he didn't even respond in any way when directly asked that question, correct? He did not. So what's your – the strongest thing the State can point to to suggest that he did understand what sentence he was going to receive if the court accepted his plea? The surrounding circumstances. What Brader requires is that he be fully aware of the direct consequences, and he was made aware by his attorney. Well, we know that? His attorney stated that he discussed the direct consequences. I'm sorry. He discussed entering the plea of guilty with his client before he came to the hearing, which necessarily – But we don't know the content of that conversation except that we now have a statement or affidavit from Anderson saying he was told he was getting 15 years. Sure. He did say that. And that is – is Ramos – was Ramos the lawyer? Yes. That represented him at the plea? Yes. He's still alive? I have no idea. Did the State try to find him? No, we didn't. Okay. Excuse me. The trial court had the opportunity to observe the defendant at at least two different hearings, the 995 motion and the change of plea hearing, and it's the State's position that someone with at least an eighth-grade education is able to understand what 15 to life means and not – Will you make his response at the end of the plea colloquy where the judge asks him what his plea is, and he says, I plead guilty in the second degree? My position is that he understood that second-degree murder was different from first-degree murder with which he was charged, with which his co-defendant was pleading to, and that he was making sure that he was entering his plea to the correct charge, to the charge which he understood he was pleading, and that's our position on that particular issue. Now, he was asked directly during the colloquy whether anyone had threatened or coerced him, right? And he did respond to that? Yes, he was also asked whether he was entering his plea freely and voluntarily. He responded yes to that question as well. It's the State's position that someone with at least an eighth-grade education – Is it your position that someone who says, I'm pleading freely and voluntarily, can't ever show that he wasn't pleading freely or voluntarily? That's not our position at all. Our position is that the evidence just points to the fact that he was pleading freely and voluntarily. There's no evidence to the contrary other than the facts of the offense in the defendant's own words after the fact. Excuse me. With regard to the – excuse me – the coercion claim, this isn't a case in which an unwary petitioner was trapped in any way. In his petitions to the Supreme Court of California, which I've included in the supplemental excerpts of the record, he does use the term involuntary. And he claims that he entered his plea – he did so involuntarily. But using this buzzword and throwing the record at the court isn't – You know, you say it's a buzzword, and then we say, unless you use the buzzwords, you've forfeited your rights. But this word means – You say when he does use a buzzword, it's a buzzword. This term means so many different things, even with regard to a plea. For instance, what he specifically says in his Supreme Court petition is that it's involuntary because his confession was taken in violation of Miranda. He also says it's involuntary because his plea wasn't knowing and intelligent, because he didn't understand the direct consequences of his plea. Does he ever say anything about it being involuntary because of the circumstances with the co-defendant? No, never. In neither – in neither petition. Pardon? Yeah. No mention of that – the factual basis for that claim in either of the petitions. The – By factual basis for the claim, I mean anything relating to the fact that the combination of the two had the effect of making it involuntary. He didn't develop that at all. He just kind of threw the record at the court. Well, when you say develop it, it makes me a little uneasy. The question is whether he said anything about that as a basis for the plea of involuntariness. As counsel stated, he – there were facts presented that, for instance, the – his co-defendant was larger, was angry with him, that kind of thing. But these facts were presented in such a way that he was – he was basically arguing that his involvement in the crime was less, and so this should have, you know, triggered some sort of duty by the court to – I'm sorry. So you're saying he didn't tie it in the petition? The – the factual allegations regarding his – the co-defendant was not in the petition related to the involuntariness? Not at all. And in fact, the – most of the facts in the petition were not – at the district court level is what counsel is citing to, the fact that his co-defendant was twice his size, was – all of these things. It was in the original petition at the district court, which was ultimately superseded by his amended petition. So it wasn't even before the district court for consideration. Do we know – His amended petition – I'm sorry? I'm sorry. I didn't finish. His amended petition superseded the petition in which the majority of the facts appeared. And so I can only assume that the district court didn't even consider those because the amended petition did supersede that. Do we know whether the state trial court that accepted the plea and later sentenced Anderson was aware of his mental condition, specifically that he had a history of mental illness and an IQ in the 70 range? At the plea – at the time of the plea? Yes, sir. I cannot say that, no. How about at the time of sentencing? I cannot say that for sure. As co-counsel has – I'm sorry, as counsel has stated, there was a 26-page report which the court has requested. But I cannot say what's in the report. Ordinarily, at this time, would a pre-sentence report have been done? Ordinarily, I would imagine so, yes. The judge would have had some document which would have provided some assessment of the person that he was going to sentence, but we don't have that. No, we don't. Okay. What sort of time elapsed between the time that the plea was accepted and the sentence was rendered?  I can look that up for the court. The change of plea was February 4, 1991. Sentencing occurred March 1, 1991, so less than a month. About a month. When was the first time that the petitioner claimed that he didn't enter a voluntary plea? Did he take a direct appeal on that? I cannot say for sure. There was no direct appeal, right? No, there was no direct appeal. He was time barred. He was about eight days late on his appeal. I'm sorry? He was eight days late on his appeal. Yes, it was not very long. Do you know whether he was in prison at the time or in jail at the time of the appeal? He was. So it arrived eight days late. I don't know when it was mailed. So it might have actually been timely for all we know. Might have. But he didn't have a lawyer, right? I don't believe so. Well, that's just one of the unfortunate things about the system, isn't it? Unless the court has any further questions, I'm prepared to submit it. Thank you. Well, I have one other question. Just out of curiosity, what's your view on the relevance of whether the trial judge knew that he – which I think is below the level. Sure. Okay. Let's say it was 20. Does it matter? And if so, in what way that the trial judge was aware of that? On the question of whether he actually understood. Sure. I believe that it does matter. I think the trial court obviously is in the best position to determine whether or not the defendant is understanding. So it matters to the extent we give difference, is that it? Oh, I'm sorry. Is that what you're saying, that it matters? No, not to the – no, I'm sorry. No. Well, okay, then why does it matter? You say he's in the best position to evaluate it. To evaluate, yes. And so – but that is not a question. Then he's – so then it matters to the extent we respect his judgment or give difference to his ruling, right? That's true, yes. Okay. No, I'm just curious about your view of the effect of it. You would say if he knew about it – if he didn't know about it, we would give less difference. Arguably, yes. No, no, not arguably. What is – you could say arguably either way, on either answer. Sure. But your position is if he didn't know at the time of the plea, we should give less difference to his decision because he didn't know an important fact. Is that right? Or tell me we should give more difference. No, definitely not more. No. But I believe because the trial court was in such a great position to determine whether or not he was understanding what was going on. Well, he'd be in a better position if he knew he had an IQ of 150. That's absolutely right. He would be in a better position if he had before. Okay. That means we would give less difference if he didn't have the report. Yeah, I'll admit to that. Okay. All right. Thank you. Thank you. Your Honor, just a few points in rebuttal. First on the issue of the direct appeal, there was an attempt at a direct appeal, as Your Honor indicated. It was filed eight days late. The petitioner was – Well, we don't even really know it was filed eight days late. It arrived – It arrived. That's correct. Eight days after it had to, and nobody ever mentioned the mailbox rule or what date it was actually signed. And the petitioner had been transferred during that time. Next, I'd like to turn to the issue on this maximum sentence. The standard is that the record has to affirmatively show that Mr. Anderson understood the maximum possible sentence. That's Boykin, that's Pebworth, that's these other cases. Well, as I understand the issue in the case, nobody is denying that he had to understand. And the only issue is whether the record shows that he did understand or whether the state court judgment that he understood is a reasonable judgment. Right. I think the only evidence is that he didn't understand, and the record is silent as to whether or not he did, and the court – the state court made no effort to inquire further on that issue. I'd also like to point out with respect to the mental retardation evidence, Your Honor, he didn't suddenly become mentally retarded. He's been mentally retarded all his life. He was receiving Social Security benefits from 1985, and that a month after sentencing he was diagnosed by the prison as being mentally retarded. On the issue of – that Your Honor raised with respect to whether or not Mr. Anderson understood, whether he was pleading the first degree, second degree in the plea colloquy, this doesn't indicate one way or another whether Mr. Anderson, in fact, understood what the elements of those charges were, what the differences were. It just shows, you know, second degree is better than first degree. I just found – I asked the question because I found it a little curious. I've probably read 3,000 of these plea colloquies, and to me this is like a defendant saying I plead guilty on third base. Yeah. I think he's just really puppeting the words of counsel. It doesn't fit. Yeah. And finally, just on the exhaustion issue, as the court is aware that the issue of involuntariness was raised, the specific issue as to whether there's a package plea deal, those facts were presented both to the state and to the district court in this case, and therefore we submit that. Well, I guess we just have to read the petitions because your opponent agrees the facts are in the petition. Right. But he says they're not there in relation to this particular claim. They're in there for some different reasons. So it's – you're in agreement that the facts are there and that involuntariness is claimed. And I would just – I would just submit that it's, you know, he's a pro se. He's been represented until this point, and the process has been pro se in attempting to make his various habeas petitions and in the district court as well. Thank you, Your Honor. Unless there's further questions. Thank you. Thank you both. The case just arguably – thank you all, in fact. The case just arguably submitted.
judges: Reinhardt, Siler, Hawkins